THE ENDSLEIGH.

(District Court, S. D. New York. June 16, 1903.)

1. SHIPPING—TIME CHARTER—LIABILITY OF SHIP TO CHARTERER FOR ACTS OF OFFICERS.

Under a time charter which provides that the owners shall provide and pay the officers and crew, and the charterer shall provide and pay for the coal, and that the captain, although appointed by the owners, shall be under the orders and direction of the charterer as regards employment, agency, or other arrangements, the charterer has no right of action against the vessel for the value of coal paid for by it as having been bought by the master, but alleged not to have been delivered to the vessel, or to have been misappropriated by the vessel's officers. In their dealings with respect to the coal, the master, engineer, and crew are to be regarded as agents of the charterer.

In Admiralty. Suit by charterer to recover the value of coal supplied for the vessel's use.

This was a libel by the charterer of the steamship Endsleigh to recover from the vessel's owners the value of certain quantities of coal supposed to have been supplied to the steamer during the pendency of the charter party, and actually paid for by the charterer, but which it claimed were either never delivered on board the vessel, or else were misappropriated by the vessel's officers after delivery on the steamer. There was an alternative claim that the steamer was able, when maintained in a fit condition, to make her maximum speed on a coal consumption of 12 tons a day, but that, notwithstanding, she actually consumed over 14 tons a day for a considerable portion of the charter, according to the reports of the vessel's officers. If all the coal paid for by the charterer was delivered to the vessel, the charterer claimed to be entitled to recover the value of the coal consumed by the vessel in excess of 12 tons per day.

The charter party was for a period of twelve months. The material provisions of the charter were:

"(1) That the owners shall provide and pay for all the provisions and wages and consular shipping and discharging fees of the captain, officers, engineers, firemen and crew, shall pay for the insurance of the vessel; also, for all engine room stores and deck stores, and maintain her in a thoroughly efficient state, in hull and machinery for the service.

"(2) That the charterers shall provide and pay for all the coals, fuel, port charges, pilotages, agencies, commissions and all other charges whatsoever, except those before stated, and shall accept and pay for all coal in the steamer's bunkers on delivery, and the owners shall, on expiration of this charter party, pay for all coal left in the bunkers, each, at the current market price at the respective ports when she is delivered to them. * * *"

"(8) That the captain (although appointed by the owners) shall be under the orders and direction of the charterers as regards employment, agency, or other arrangement; and the charterers hereby agree to indemnify the owners from all consequences of liabilities that may arise from the captain signing bills of lading, or in otherwise complying with the same.

"(9) That if the charterers shall have reason to be dissatisfied with the conduct of the captain, officers or engineers, the owners shall, on receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

"(10) That the master shall be furnished, from time to time, with all requisite instructions and sailing directions, and shall keep a full and correct log of the voyage or voyages which are to be patent to charterers or their agents, and to furnish the charterers, their agent or supercargo, when required, a true daily copy of log, showing the course of the steamer and distance run, and the consumption of coal, and to take every advantage of

wind by using the sails, with a view to economize the expenditure of coal."

"(12) That in the event of loss of time from deficiency of men or stores, breakdown of machinery, stranding, or damage preventing the working of the vessel for more than twenty-four running hours, the payment of the hire shall cease until she be again in an efficient state to resume her service, and should she in consequence put into any other port other than that to which she is bound, the port charges and pilotages at such port shall be borne by the steamer's owners, but should the vessel be driven into port or to anchorage by stress of weather, or from any accident to the cargo, such detention or loss of time shall be at the charterers' risk and expense."

Wheeler, Cortis & Haight, for libelants.
Convers & Kirlin, for the Endsleigh.

HOLT, District Judge. I have examined the briefs submitted for the libelants in this case. I see no reason to change the opinion expressed at the conclusion of the trial. It was the charterers' duty to furnish the coal to the ship. They left that duty to the master. Therefore the master, in buying the coal, was the agent of the charterers. The coal when bought was the property of the charterers, and it was the duty of the charterers to use it in the navigation of the ship, and the master, engineer and crew, being authorized to use it, acted in respect to whatever they did or omitted to do about the coal as the agents of the charterers. If, therefore, untruthful reports were made to the charterers as to the amount purchased, or coal actually purchased was misappropriated, those were fraudulent acts perpetrated by an agent against his own principal, for which he is responsible to the principal, but which, in my opinion, imposed no liability on the owners of the ship, and no maritime lien on the ship. I think it proper to add that no inference should be drawn from this decision that, in my opinion, there is any evidence establishing that the master or engineer or any of the crew were guilty of any misappropriation of the coal, or misconduct of any kind in relation to it. I put the decision on the legal proposition that the libelants have no ground of recovery, on the evidence, against the ship.

I think that the libel should be dismissed, with costs.