CRISP v. UNITED STATES & AUSTRALASIA S. S. CO.

(District Court, S. D. New York. June 24, 1903.)

1. SHIPPING—LIABILITY FOR FAULT OF COMPULSORY PILOT.
    The fault of a compulsory pilot is not imputable to the shipowner, nor to a charterer where the pilot is his agent.

2. SAME—SELECTION OF WHARF BY CHARTERER—UNSAFE APPROACH.
    Under a charter providing that the wharf for discharging shall be selected by the charterer, where the ship can always safely lie afloat at any time of tide, the charterer is liable for the vessel's loss of time and expense due to an unsafe approach to a discharging wharf selected by him.

In Admiralty. Action for charter hire.

Convers & Kirlin, for libelant.
Wing, Putnam & Burlingham, for respondent.

ADAMS, District Judge. This is an action which was brought by the libelant, as master of the S. S. Salfordia, to recover a balance of $2826.40 charter hire, alleged to be due to the owners of the steamer from the respondent, under a charter party, dated July 6th, 1900.

The charter party provided for a term of about six months. The steamer entered upon its performance at New York, on the 17th of

August, 1900; and, having been loaded for Melbourne and Brisbane, was ordered by the charterer to proceed to Sydney, N. S. W., via Melbourne, where she arrived on the 6th of November, 1900, and reported to the respondent's agents.

While the steamer was lying off Sydney Head, awaiting orders, a pilot came on board, bringing an order from the agents for the vessel to proceed to a wharf, known as Federal Wharf, about 10 miles distant, and somewhat beyond a draw-bridge, known as Pyrmont Bridge, through which it was necessary for the steamer to pass to reach the wharf. The steamer's beam was 51 feet, but the master, in response to an inquiry, advised the pilot that it was 52 feet. There was apparently enough room in the opening of the bridge, on the surface of the water, for the steamer to pass, with three or four feet margin, but when she got in the opening, she stuck upon some obstructions under the water, causing some delay and expense to the charterer, for which it deducted the amount in controversy from the steamer's hire, and which it seeks in this action, to maintain as a defence to the hire which remains unpaid.

From the nature of the pilot's employment, it was his duty to know whether the steamer could go through the opening. The public had been notified by the Department of Public Works of Sydney, through the New South Wales Government Gazette, published by authority of the Government, that the opening was only available "for vessels at forty-four feet beam and under." Nevertheless the pilot had negligently remained ignorant of the true capacity of the opening and attempted to take the steamer through at a stage of the tide when it was impossible, and the damages resulted.

A compulsory pilotage law was in force in New South Wales at the time (2 St. New South Wales, p. 1568) so that the employment of this pilot was obligatory.

It is a matter of dispute between the parties as to whose agent the pilot was, the libelant contending that the respondent should be liable for his negligence. At common law, no action can be maintained against the owner of a vessel for the fault of a compulsory pilot—Homer Ramsdell Co. v. Comp. Gen. Trans., 182 U. S. 406, 21 Sup. Ct. 831, 45 L. Ed. 1155—and it does not appear how an action in personam in admiralty differs in principle, there being no question of a fault of the ship or of a lien upon her. Even, therefore, if the pilot was the respondent's agent, his negligence is not imputable to it and the responsibility for the loss is to be determined by the agreement of the parties, as expressed in the charter party.

It was there provided that the steamer was "to be employed * * * in any lawful safe trade," and:

"7. That the cargo or cargoes to be laden and/or discharged in any dock or at any wharf or place that the charterers or their agents may direct, provided the steamer can always safely lie afloat at any time of tide.
  ⁕    ⁕    ⁕    *    *    ⁕    ⁕    *    ⁕    ⁕    *

"16. That in the event of loss of time from * * * breakdown of machinery, stranding, or damage preventing the working of the vessel for more than twenty-four consecutive working hours, the payment of hire shall cease until she be again in an efficient state to resume her service * * *.

"17. * * * The act of God, enemies, fire, restraint of Princes, rulers

and people, and all dangers and accidents of the seas, rivers, machinery, boilers and steam navigation, and errors of navigation throughout this charter party always mutually excepted."

In this aspect of the case, the libelant relies upon the section first quoted, and some others which I do not deem it necessary to consider, and the respondent upon the last two quoted sections.

I conclude that the libel should be sustained. The loss of time and expense were primarily due to an unsafe approach to a wharf selected by the respondent. A covenant for a safe loading or discharging place implies that a port to be named by the charterer shall be one where the vessel can safely get with her whole cargo and can discharge her whole cargo without touching the ground—Carver's Carriage by Sea, § 449—and, of course, without being subject to obstructions, at any stage of the tide, in a bridge opening it may be necessary to use to reach the discharging wharf—Mencke v. Cargo of Java Sugar, 187 U. S. 248, 23 Sup. Ct. 86—Although the accident might have been avoided by a better knowledge and more care on the part of the pilot, it was proximately ascribable to the failure of the respondent to comply with its covenant that the discharge should take place at a wharf where the steamer could always lie afloat at any time of the tide and its accompanying duty with respect to the approaches. This does not necessarily mean that a vessel, under these circumstances, should be precluded from using a wharf, where it could always lie afloat but which it could only safely approach at a certain stage of the tide, but I consider that a fair construction of this contract requires that the risk of approaching the wharf at any stage of the tide should be the respondent's, notwithstanding the steamer is under the charge of a pilot, compulsorily employed, and he fails in his duty to be familiar with the approach.

The terms of sections 16 and 17 do not afford any relief to the charterer from the payment of the charter money, under the circumstances of the case.

Decree for the libelant for the sum of $2826.40, with interest.