**PARK S. S. CO., LImited, v. CITIES SERVICE OIL CO.**

No. 174, Docket 21902.

United States Court of Appeals
Second Circuit.

Argued Feb. 9, 1951.

Decided April 11, 1951.

Burlingham, Veeder, Clark & Hupper, New York City (Eugene Underwood, New York City, and Richard W. Palmer, New York City, of counsel), for appellant.

Nash, Ten Eyck, Maximov & Freehill, New York City (Barent Ten Eyck, New York City, and Robert S. Blanc, Jr., New York City, of counsel), for appellee.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The question presented by this appeal is the proper construction of a safe berth clause contained in the charter party under which the owner of the tanker Clearwater Park chartered her to Cities Service Oil Company for two consecutive voyages with cargoes of crude oil from a safe port in Venezuela to a safe port in the United States, north of Hatteras, Norfolk/Portland range, "at charterer's option as ordered on signing bills of lading." In addition to the safe port clause the charter party contained a safe berth clause reading as follows: "The vessel shall load and discharge at any safe place or wharf, or alongside vessels or lighters reachable on her arrival, which shall be designated and procured by the Charterer, provided that the vessel can proceed thereto, lie at, and depart therefrom always safely afloat, any lighterage being at the expense, risk and peril of the Charterer * * *".

On both voyages the charterer gave notice to the shipowner's agent that the vessel would discharge at "Boston Harbor Hingham Bay anchorage into lighters." Since the facts are set out at length in the district court's opinion, 93 F.Supp. 201, it will suffice here to say that on each occasion the vessel was piloted to Hingham Bay anchorage by Pilot Cleverly, who selected the spot where the anchor was dropped and negligently anchored too close to shoal water, and on each occasion the vessel grounded. The present suit sought recovery for the resulting damage.

The district judge held that the charterer's designation of "Boston Harbor Hingham Bay Anchorage" was a sufficiently precise designation of a "place" under the terms of the charter party; that Hingham Bay was a "safe place" in as much as it contained areas where the vessel could have anchored without danger of grounding; and, since the charterer was under no obligation to designate the exact spot where the vessel was to anchor, the pilot was not performing the charterer's work, but the shipowner's, in selecting the anchorage; consequently, the negligence of the pilot which caused the grounding was attributable to the shipowner, and the libel was dismissed. With these conclusions we are unable to agree.

The issue presented for decision is whether the charterer or the owner was obligated to select a safe berth for discharging into lighters in an area containing both safe and unsafe berths. The answer must be sought in the language of the safe berth clause, which permits the vessel to discharge at any one of three *loci* provided she "can proceed thereto, lie at, and depart therefrom always safely afloat." The three *loci* are "any safe place or wharf, or alongside vessels or lighters reachable on her arrival." Specifically the question is whether the word "place" means the spot selected to drop anchor (plus the area over which the tanker may swing on a tide) when she is to discharge into lighters. Both the language and the purpose of the clause require an affirmative answer. The "place" must be one "at" which the vessel can lie. This is appropriate language to refer to her specific berth while at anchor, but is wholly inappropriate if "place" is construed to include an area as large as Hingham Bay. Moreover, the natural meaning of "safe place" is a place entirely safe, not an area only part of which is safe. The appellant's construction of the clause also finds support in the *ejusdem generis* rule of interpretation. Only a specific anchorage spot is the equivalent of a berth at a wharf. If the charterer had designated a "wharf" for discharging and the berth at which the vessel was moored proved to be unsafe, no one would say that the charterer had performed its duty in designating a wharf at which one berth was safe and another unsafe, and had thereby cast upon the ship's master responsibility for finding the safe berth. The contrary, in effect, was held in Cities Service Transp. Co. v. Gulf Refining Co., 2 Cir., 79 F.2d 521, where the court said that "the charter party was itself an express assurance, on which the master was entitled to rely, that at the berth 'indicated' the ship would be able to lie 'always afloat.'" So far as we have discovered the word "place" has been given a spatially limited construction by all courts

which have considered similar safe berth clauses.[1]

■ The purpose of the clause also supports the construction we give it. The charterer wishes to control the manner and place of discharging its cargo. The most advantageous place for the charterer will be a wharf at the refinery. If the discharge is into lighters the closer the ship can get to the refinery the less the cost of lighterage. Hence the charterer bargains for the privilege of selecting the precise place for discharge and the ship surrenders that privilege in return for the charterer's acceptance of the risk of its choice. To give the charterer only the privilege of designating a general area rather than a specific berth and to put on the shipowner the responsibility of finding a fair berth in that general area is to misconstrue the intention of the parties and to defeat the very purpose of the safe berth clause.

The district court found that pilot Cleverly was employed by the libellant and not by the charterer. But this finding is immaterial to the decision if, as we hold, the charterer had the duty to procure a specific anchorage within Hingham Bay. Having covenanted that it would be a "safe place," the respondent was responsible for the conduct of Cleverly as a "borrowed servant."[2] Although in the libellant's employ, the pilot was performing a service for which the charterer was responsible.

■ The charterer contends that even if its covenant to designate and procure a safe berth were broken, the breach was not the proximate cause of the groundings because the ship was at fault in that she had only British charts of Hingham Bay and in that her officers did not intervene when they saw where pilot Cleverly was dropping anchor. The district court made no finding of fault on the part of the ship's officers and we see no basis in the evidence for such a finding. The December grounding was due to dragging anchor because it was dropped on bad holding ground. No examination of the charts, whether British or American, would have shown poor holding ground. The January grounding was not due to dragging anchor and was at a point some 400 yards distant from the December anchorage and on a shallow spot not shown on any chart. Hence the officers' knowledge of the first grounding gave them no reason to question the pilot's judgment in selecting the January anchorage. They were not negligent in failing to intervene unless the pilot was doing something obviously dangerous.[3] Moreover, since the officers had no knowledge of the danger, the charter party was an express assurance that the berth was safe, on which they were entitled to rely.[4]

Decree reversed and cause remanded for further proceedings in conformity with this opinion.

1. See Constantine & Pickering S. S. Co. v. West India S. S. Co., D.C.S.D.N.Y., 199 F. 964; Crisp v. United States & Australasia S. S. Co., D.C.S.D.N.Y., 124 F. 748; Stag Line, Ltd. v. Board of Trade, 84 Ll.L. 1, 4, where Lord Oaksey said: "It seems to me also that the words 'place or places as ordered by charterers and/or shippers,' in the position they occupy in the clause, must really refer to the berths, or points, or spots, at which the ship could load * * *".

2. Denton v. Yazoo & M. V. R. Co., 284 U. S. 305, 52 S.Ct. 141, 76 L.Ed. 310; Smith v. Booth, 2 Cir., 122 F. 626; The Endsleigh, D.C.S.D.N.Y., 124 F. 858; The Santona, D.C.S.D.N.Y., 152 F. 516; P. Dougherty Co. v. Bader Coal Co., D.C. Mass., 244 F. 267, 271. See also Sun Oil Co. v. Dalzell Towing Co., Inc., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311; Moran T. & T. Co. v. Navigazione Libera Triestina, S. A., 2 Cir., 92 F.2d 37, certiorari denied 302 U.S. 744, 58 S.Ct. 145, 82 L.Ed. 575.

3. See Ralli v. Troop, 157 U.S. 386, 402, 15 S.Ct. 657, 39 L.Ed. 742; Union Shipping & Trading Co., Ltd. v. United States, 2 Cir., 127 F.2d 771, 775.

4. Cities Service Transp. Co. v. Gulf Refining Co., 2 Cir., 79 F.2d 521.