(160 App. Div. 838)

### BIGUS v. LEHIGH & WILKES-BARRE COAL CO.

(Supreme Court, Appellate Division, Second Department. February 27, 1914.)

1. MINES AND MINERALS (§ 118*)—INJURIES TO THIRD PERSONS—MINE FOREMAN.

   Where an accident in a mine was caused by the negligent failure of a worker in the mine to give warning of the approach of a car by which the injured person was struck, the proximate cause of the accident was within the control of the mining foreman employed under the statute, requiring the employment of a certified mine foreman who shall have control of the interior of the mine even to the exclusion of the master, except as to special duties of the master which may not be delegated.

   [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 240; Dec. Dig. § 118.*]

2. MINES AND MINERALS (§ 118*)—PERSONAL INJURIES—MINE FOREMAN.

   That a person injured from being struck by a car in a mine was not employed in the mine, but was merely there seeking employment, did not preclude the mineowner from being relieved from liability because the accident was due to negligence in respect to matters under the control of a certified mine foreman employed as required by statute.

   [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 240; Dec. Dig. § 118.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Queens County.

Action for personal injuries by Mike Bigus against the Lehigh & Wilkes-Barre Coal Company. From judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, RICH, STAPLE-TON, and PUTNAM, JJ.

Otto H. Droege, of New York City, for appellant.

Robert Thorne, of New York City (Gomer H. Rees, of New York City, on the brief), for respondent.

THOMAS, J. Plaintiff, 8½ years employed in coal mines, and for three years of the time in defendant's employment, interrupted his service for a brief time, and then entered defendant's mine to get work. He rejected proffered opportunity, and, while returning, stopped at a place called a gangway, through which was a car track, and from which one or more chambers radiated, through which cars came. Upon request he helped in the removal of a car from the gangway, and then stepped back upon the track therein, where he was hit by a miner's car moving upon such track. The car was unlighted, and the only lights were those on the heads of the miners. The oil in his own lamp was spent. He charges that no warning of the coming of the unattended car was given by the miner who started it on its way, or by the boys who open and shut intervening doors to let it pass. The plaintiff was experienced, and must be deemed acquainted with the purposes of the gangway.

[1] The complaint was dismissed upon the ground that the mine was under the control of a certified mine foreman, whose employment was imposed by the state. His power was as broad as the statute, and, during his retention, was beyond the interference of the owner of the mine, unless the incompetency of the mine foreman or his neglect was directly brought to the owner's notice. The questions involved are whether the proximate cause of the accident was within the control of the mineowner, and whether the plaintiff is affected by the act. The sway of the mine foreman, it is inferred, extends to all functions in operation. He rules in such regard the interior of the mine, even to the exclusion of the master, except as to special duties that the law places on the master and which may not be delegated. When, and whither, cars shall run, under what regulations, signals, warnings, or discipline, he determines, and his authority is exclusive. In such case the master, by compulsion of law deprived of participation in operation, is acquitted of responsibility. It would be illogical and unjust to confine the conduct of the works to the skill and discipline of a mine foreman and to impute his negligence to the owner constrained to surrender authority to him.

I find no decision of the courts of Pennsylvania that decides specifically that the owner is absolved from liability for injury caused by the negligent failure of a worker in the mine to give warning of the approach of the car, or by negligent omission to furnish lights, but the duty is so intimately interwoven with others in the operation of the mine that the conclusion is enforced. There are two statutes, one

(Act of June 2, 1891 [Pennsylvania Laws, p. 176]) relating to mining of anthracite coal, and one (Act of May 15, 1893 [Pennsylvania Laws, pp. 52, 61]) relating to bituminous coal, but the decisions falling under either statute ascribe similar power to the mine foreman, and correspondingly absolve the owner for any negligent act in the conduct of the mine falling under the control of the mine foreman.

In Durkin v. Kingston Coal Co., 171 Pa. 193, 33 Atl. 237, 29 L. R. A. 808, 50 Am. St. Rep. 801, are stated the reasons for exempting the owner. In the opinion it said of the statute:

"Through it the lawmakers say to the mineowner: 'You cannot be trusted to manage your own business. Left to yourself, you will not properly care for your own employés. We will determine what you shall do. In order to make it certain that our directions are obeyed, we will set a mine foreman over your mines, with authority to direct the manner in which your operations shall be conducted, and what precautions shall be taken for the safety of your employés. You shall take for this position a man whom we certify to as competent. You shall pay him his salary. What he orders done in your mines you shall pay for.'"

It was decided that the owner was not responsible, notwithstanding the provision of the statute imposing liability. The case has been followed without interruption in decisions, for a review of which I recommend the opinion in Pittsburgh-Buffalo Co. v. Cheko, 204 Fed. 353, 124 C. C. A. 451. The authority of the earlier cases has not been diminished by decisions that there are duties prescribed by statute that are not delegable to the mine foreman (O'Brien v. Penna. Coal Co., 237 Pa. 44, 85 Atl. 130), or that the master may be liable for failure to instruct inexperienced employés placed in the mine (Bogdanovicz v. Susquehanna Coal Co. [1913] 240 Pa. 124, 87 Atl. 295), or for negligent acts or omissions by the owner or his agent (Reeder v. Lehigh Valley Coal Co., 231 Pa. 563, 80 Atl. 1121; Pauza v. Lehigh Valley Coal Co., 231 Pa. 577, 80 Atl. 1126. But the primary decision is that a mine foreman is not the agent of the owner, but is a person whose skill and capacity is certified by the state, and of a class from which the owner must choose. I make excerpts from expressions indicating the breadth of the statute:

"The duty of the mineowner is to employ competent bosses or foremen to direct his operations. When he does this he discharges the full measure of his duty to his employés, and he is not liable for an injury arising from the negligence of the foreman." Durkin v. Kingston Coal Co., supra.

"When the owner employs a certified mine foreman and puts him in charge of the internal workings of the mine, he has done all that the law requires him to do, and he is not required, through his superintendent, to inspect and look after the interior of the mine." Wolcutt v. Erie Coal & Coke Co., 226 Pa. 204, 210, 75 Atl. 197, 198.

"In other words, by command of the statute, the interior of the mine is taken out of the possession and control of the owner and placed in charge of a certified foreman, with whom the owner's superintendent is forbidden to interfere, and who has power to compel compliance with his directions so far as they relate to the safety of the employés engaged in the mine." Dempsey v. Buck Run Coal Co., 227 Pa. 571, 76 Atl. 745.

"But it is argued it was the duty of the mine foreman to see that the trolley wire was maintained in good repair, and if there was any negligence in this respect it was the negligence of the mine foreman, for which appellant is not liable. It has been held in a long line of cases that the mineowner is not liable for the negligent acts of a mine foreman committed in the

discharge of duties imposed upon him by law and in and about those workings over which he exercises supervision. From Lehigh Valley Coal Co. v. Jones, 86 Pa. 432, and Durkin v. Kingston Coal Co., 171 Pa. 193 [33 Atl. 237, 29 L. R. A. 808, 50 Am. St. Rep. 801], to Golden v. Mount Jessup Coal Co., 225 Pa. 164 [73 Atl. 1103], this rule has remained unbroken." Reeder v. Coal Co., supra. The opinion further says: "We see no reason why the electric hauling system, like all other underground workings, should not be under the supervision of the mine foreman. Rule 1, of article 12, of the act of 1891, provides that the mine owner 'shall place underground workings thereof, and all that is related to the same, under the charge and daily supervision of a competent person, who shall be called "mine foreman." ' Rule 2 provides for the employment of a sufficient number of competent assistants when the mine foreman cannot personally attend to all of his duties. These assistants, when so employed, are under the control and subject to the orders of the mine foreman. Rule 13 makes it the duty of the mine foreman, or his assistants when so employed, to examine at least once every day all slopes, shafts, main roads, travelingways, signal apparatus, pulleys, and timbering and see that they are in safe and efficient working condition. Clearly, therefore, the framers of the statute had in contemplation that all of the underground workings should be in charge of the mine foreman, and the wisdom of so providing is not open to doubt. In dangerous work of this character it is a wise precaution to have a competent mine foreman duly certified by the commonwealth with certain statutory duties to perform as a protection to the health and safety of the men thus employed, as well as to the property of the mineowner."

And after discussing the effect of the noncompliance with the statute in committing the whole of the plant to the mine foreman, it is added:

"We think it would be safer and wiser for all parties concerned if all the underground workings should be committed to the care and supervision of the mine foreman, and then there would be no division of authority."

In Hood v. Connell Anthracite Mining Co., 231 Pa. 647, 652, 81 Atl. 56, 58, it is said:

"The character of his duties as mine foreman is not necessarily changed because he may hire or discharge men working under him, or suggest where and in what capacity the men shall work, or how the entries shall be driven, or the mines be developed. He may do all of these things and still be acting in his capacity as mine foreman. Indeed, if he is a competent mine foreman, which the law presumes him to be, he is better qualified to do all of these things than any one else. The test is not the particular acts he may do in connection with the underground workings, but whether he has the charge, control, and supervision of these workings to the exclusion of any other authority. When he has this exclusive supervision no one can dispute his authority as mine foreman, and even the owner cannot interfere with the performance of his duties. It is the duty of the mine foreman to see that all the statutory requirements intended to safeguard the health and lives of the men are properly enforced. * * * It sometimes happens that the mineowner does not commit the exclusive charge of the interior workings to the mine foreman, but, acting through his superintendent, undertakes to exercise authority over certain parts of the interior workings without reference to the duties of the mine foreman. When this is done the owner may be held liable for the negligent acts of his superintendent or those acting under his direct authority."

Further instructive decision is found in Rafferty v. National Mining Co., 234 Pa. 66, 82 Atl. 1089; Simmons v. Lehigh Valley Coal Co., 240 Pa. 354, 87 Atl. 568. It is unnecessary to follow the decisions. The doctrine was reiterated in D'Jorko v. Berwind-White Coal Min-

ing Co., 231 Pa. 164, 80 Atl. 77, where it was also decided that the Employers' Liability Act of June 10, 1907 (Pennsylvania Laws, p. 523), does not affect the law as announced by the decisions quoted.

One Jones was called as a witness for the plaintiff, and, after testifying that all the miners and runners and other people in the mine were in the employ of the defendant, who owned the mine, he was allowed to testify that he was a certified miner; that he employed the man with power to discharge; that he had charge of the operation of the mine underground.

"I did have charge of the operation of that mine underground. I did have full charge of it. I did have full and complete control of it. * * * I did have charge of the location of tracks in the mine. I did have charge of the rules and systems of signals that existed in the mines. In exercising the functions which I have just described, no one did exercise control over me."

Again he says:

"I can adopt any precautions that I see fit in that mine without regard to the wishes of the Wilkes-Barre Coal Company, and any system of signals that I desire I can institute, no matter whether it uses up all the profits or not."

The decisions have to do with physical matters in the mine, and specific reference is not made to warnings, signals, and the direction and command of men, yet the scope and power ascribed to the mine foreman is such that such duties must fall within it. It is true that in Bogdanovicz v. Susquehanna Coal Co., supra, where the duty of instruction was involved, it is said that the owner can be relieved only "by pointing to a provision of the statute which imposes such duty on the mine foreman and relieves the owner or operator." But the case at bar falls within the statute as construed by the courts of the state.

[2] The next question is whether the statute is applicable to the plaintiff, who at the time was not regularly working in the mine, but who went there to obtain work. It may be considered that at the time he was hurt he was working in the mine, but I rest the conclusion on the broader consideration that the statute affected the plaintiff. As stated in Pittsburgh-Buffalo Coal Co. v. Cheko, 204 Fed. 354, 124 C. C. A. 451, the object of the act is expressed "in the title, namely, to provide for 'the lives, health, safety, and welfare of persons employed' in bituminous coal mines." It is urged that the exemption of the master is based upon the principle that the mine foreman is a fellow servant of the miners, and that, as the plaintiff was not a fellow servant, the doctrine is not applicable. It is true that the doctrine of fellow servant was and is used as a principle for exempting the master (Lineoski v. Susquehanna Coal Co., 157 Pa. 153, 27 Atl. 577), and in Durkin v. Kingston Coal Co., supra, the same consideration was advanced, but with the introduction that "the same conclusion may be reached by another road." But in priority of discussion the court adopted the broader theory that under the statute the foreman represented the commonwealth (see page 201 of 171 Pa., page 238 of 33 Atl. (29 L. R. A. 808, 50 Am. St. Rep. 801), and not the master, and that larger consideration was entertained in the later cases as a fundamental reason for exempting the master. If, now, the state through

its Legislature takes the mine from the control of the owner and vests it in the mine foreman so exclusively that the master may not interfere, it also prevents the master from making any provision for the protection of men who, from time to time, may go into the mine for the purpose of seeking work. For the purpose of such visit the whole system for conducting the mine, commanded by the state, cannot be recast and the control taken from the mine foreman and reinvested in the owner. The statute is for the benefit of miners, but the enjoyment necessarily places the mine for all purposes, and as to all men visiting it, under the dominion of the mine foreman, so far as the statute imposes duties upon him. Indeed, the plaintiff entered under the auspices of the foreman.

These conclusions lead to the affirmance of the judgment, with costs. All concur.