# BAKER'S EXECUTORS v. KILGORE.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 322.   Argued and submitted April 20, 1892. — Decided May 16, 1892.

The act of the legislature of Tennessee of March 26, 1879, c. 141, providing that " the rents and profits of any property or estate of a married woman, which she now owns or may hereafter become seized or possessed of . . . . shall in no manner be subject to the debts or contracts of her husband, except by her consent," does not take away or infringe upon any vested right of the husband, or any right belonging to his creditors, and does not deny any right or privilege secured by the Constitution of the United States.

THE case is stated in the opinion.

*Mr. F. A. Reeve*, for plaintiff in error, submitted on his brief.

*Mr. Henry H. Ingersoll* for defendants in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was commenced, October 12, 1886, before a Justice of the Peace of Greene County, Tennessee, and involves the right of property in three heifers and one steer, levied upon as the property of Frederick Scruggs, but claimed by his wife to belong to her, and not subject to seizure or sale for the debts of her husband. Judgment having been rendered for her, the case was carried by appeal to the Circuit Court of that county.

It appears that Scruggs and wife were married about eighteen years before the commencement of this action, and lived, during most of their married life, on lands deeded to her, as follows: one hundred and thirty acres, by deed of January 1, 1881; two hundred and seventy-four acres, by deed of April 19, 1877; one hundred and eight acres, by deed of May 8, 1886. The deeds to Mrs. Scruggs were in fee simple, but did not create a technical separate estate. Some years prior to this litigation her husband failed in business, after which he attended to his wife's affairs, trading for her in stock, hogs, etc., and superintending farm work, etc., as her agent. He occasionally traded in live stock for himself. From 1879 to 1881 he engaged, in the name of his father, in merchandising in a house in the yard of the home dwelling lot, and from 1881 to 1884 in the name of his brother William, and with their money, he receiving and keeping all the profits. He and Mrs. Scruggs took from the store whatever each wanted, paid hands on the farm partly out of it, and put back into the store the proceeds of the farm, but without strict account being kept between them as husband and wife, or between them and William Scruggs, as in the case of strangers. The husband did

not keep the wife's funds strictly separate from his own, but often commingled them.

In the spring of 1884 he sold some cattle belonging to the wife for about $200; and afterwards bought two head of young cattle for her with part of this money. In September or October following he purchased one other steer for her with the proceeds of what was raised on her farms, and while the cattle were pasturing together, another calf came from one of her cows. They were levied on as the property of the husband under an execution issued September 10, 1886, which was based upon a judgment against him, in favor of one Scott, rendered September 22, 1876. At the execution sale Baker, the testator of the plaintiffs in error, became the purchaser of the cattle, having at the time notice from Mrs. Scruggs that they belonged to her, and, if sold, would be replevied as her property.

The trial court found that the cattle in question were the property of the wife, having been bought with the proceeds of her estate; that a certain act of the general assembly of Tennessee, passed March 26, 1879, c. 141, upon which the wife relied — and which will be presently referred to — was not, as claimed by the defendant, in violation either of the Constitution of the United States or of that of Tennessee, prohibiting the impairment of the obligation of contracts, and did not deprive the husband or his creditors of any vested rights; and that said act protected the cattle from any execution sued out against the property of the husband. Judgment was accordingly rendered for Mrs. Scruggs.

Upon appeal to the Supreme Court of Tennessee, the judgment was affirmed, the court holding that the act of 1879 was not obnoxious to the Constitution of the United States.

By the law of Tennessee in force when the judgment of September 22, 1876, was rendered against Scruggs, the interest of a husband in the real estate of his wife, acquired by her, either before or after marriage, by gift, devise descent or in any other mode, could not be sold or disposed of by virtue of any judgment, decree or execution against him; nor could the husband sell his wife's real estate during her life without

her joining in the conveyance in the manner prescribed for conveyances of land by married women. Laws of Tennessee, 1849,.111, c. 36, § 1; Code of Tennessee, 1858, § 2481; *Id.* 1884, § 3338. : In *Lucas* v. *Rickerich,* 1 Lea, 726, it was held that the act of 1849 did not affect the right of the husband to take the rents and profits of the wife's real estate. This decision, it was said in *Taylor* v. *Taylor,* 12 Lea, 490, 495, led to the passage of the act of March 26, 1879, which, repealing all prior laws in conflict with it, provided: "Hereafter the rents and profits of any property or estate of a married woman, which she now owns or may hereafter become seized or possessed of, either by purchase, devise, gift or inheritance, as a separate estate, or for years, or for life, or as a fee-simple estate, shall in no manner be subject to the debts or contracts of her husband, 'except by her consent, obtained in writing: *Provided,* That the act shall in no manner interfere with the husband's tenancy by the curtesy." Acts of Tennessee, 1879, 182, c. .141; Milliken & Vertrees' Code, 1884, § 3343.

The cattle in dispute were, within the meaning of that act, profits of the wife's lands.

The plaintiff in error contends that when the act of 1879 was passed the judgment creditor of Scruggs had a right of which he could not be deprived by legislation, to subject to his demand any property vested in the husband; and that it was not competent for the legislature to exempt the rents and profits of the wife's estate from liability for the debts and contracts of the husband, existing at the time such immunity was declared.

We do not doubt the validity of the act of 1879, as applied to the judgment previously rendered against Scruggs. The particular profits of the wife's estate here in dispute had not, when that act was passed, come to the hands of the husband. They were. not, at that time, in existence, nor in any legal sense, vested in him. Nor were they ever vested in him. He had a mere expectancy with reference to them when the act was passed. Moreover, his right, prior to that enactment, to take the profits of his wife's estate did not come from con-

tract between him and his wife or between him and the State, but from a rule of law established by the legislature, and resting alone upon public considerations arising out of the marriage relation. It was entirely competent for the legislature to change that rule in respect, at least, to the future rents and profits of the wife's estate. Such legislation is for the protection of the property of the wife, and neither impairs nor defeats any vested right of the husband. Marriage is a civil institution, a status, in reference to which Mr. Bishop has well said, " public interests overshadow private — one which public policy holds specially in the hands of the law for the public good, and over which the law presides in a manner not known in the other departments." 1 Bishop on Marriage, Divorce and Separation, § 5. The relation of husband and wife is, therefore, formed subject to the power of the State to control and regulate both that relation and the property rights directly connected with it, by such legislation as does not violate those fundamental principles which have been established for the protection of private and personal rights against illegal interference.

If the act of 1879 did not infringe any vested right of the husband, much less did it infringe any right belonging to his creditors.

The views we have expressed are supported by the judgment of the Supreme Court of Tennessee in *Taylor* v. *Taylor*, 12 Lea, 490, 498, where it was held that the acts of 1849 and 1879, above referred to, were enacted for the benefit of married women, not of their husbands, and that a husband has no vested right to the future profits of his wife's land that prevents the enactment of such a statute as that of 1879.

As the judgment did not withhold or deny any right or privilege secured by the Constitution of the United States, it must be

*Affirmed.*