Thomas Durkin *v.* The Kingston Coal Company and William Jones, Appellants, and Morgan Rosser.

*Constitutional law—Bill of rights—Statutes—Liability to answer for the acts of another.*

A statute which imposes upon a person a liability to answer for the acts and engagements of strangers over whom he has no control, violates the bill of rights, and is unconstitutional and void.

*Constitutional law—Mines and mining—Act of June 2, 1891, art. 17, sec. 8.*

Section 8, art. 17, of the act of June 2, 1891, P. L. 176, entitled "An act to provide for the health and safety of persons employed in and about the anthracite coal mines of Pennsylvania, and for the protection and preservation of property connected therewith," in so far as it imposes liability on the mine owner for the failure of the mine foreman to comply with the provisions of the act which compels his employment and defines his duties, is unconstitutional and void.

*Negligence—Mines and mining—Mine foreman.*

A mine foreman who neglects to examine the roads and ways in use in the mine each day, as required by the act of June 2, 1891, is liable personally for injuries sustained by a miner resulting from his neglect.

*Constitutional law—Mines and mining—Act of June 2, 1891,—Definition of coal mine.*

The anthracite coal act of June 2, 1891, inasmuch as it relates to all anthracite coal mines, and properly and legally defines what shall be regarded as such mines, is not a local act, and is not unconstitutional as a whole.

The business of coal mining, like that of insurance or banking, may be defined by the legislature, and the definition contained in the act of June 2, 1891, is within the fair limits of a legislative definition.

Argued April 18, 1895.   Appeal, No. 290, Jan. T., 1895, by the Kingston Coal Co. and William Jones, two of the defendants, from judgment of C. P. Luzerne Co., Oct. Term, 1891.

194 DURKIN *v.* KINGSTON COAL CO. et al., Appellants.

No. 330, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM and MITCHELL, JJ. Reversed as to the Kingston Coal Company, and affirmed as to William Jones.

Trespass to recover damages for the death of plaintiff's son, caused by the alleged negligence of defendants. Before LYNCH, J.

At the trial it appeared that the boy, who was about nineteen years old, was employed as a driver by the Kingston Coal Company. On June 15, 1891, while he was engaged in driving a car, a portion of the mine fell in, and the boy was crushed under the débris. The evidence for the plaintiff tended to show that William Jones, the mine foreman, employed under the mining law of June 2, 1891, had neglected to make an examination of the locality where the accident occurred, as required by the mining act. Morgan Rosser was assistant superintendent of the mine.

The court charged in part as follows:

[Returning now to the question of the liability of the Kingston Coal Company as distinguished from that of Mr. Jones, I repeat, that if you shall determine from the weight of the credible evidence that Mr. Jones was the mine foreman of the Kingston Coal Company—and about that there seems to be no dispute—at the time of this accident, and that he failed to use ordinary care and caution in the matter of examining the roof, and that by reason of that failure, and that alone, this unfortunate accident occurred, the Kingston Coal Company may be held responsible under this act. The Kingston Coal Company is in duty bound to furnish only a reasonably safe place for its workmen ; or, to use the exact language of the Supreme Court, " A master owes to his servant the duty of providing a reasonably safe place in which to work, and reasonably safe appliances with which to do the work; and the delegation of this duty to an agent will not relieve the master from responsibility for an injury resulting from his negligence." In other words, since the act of 1891, the mere fact that the Kingston Coal Company had employed a competent, certified, inside foreman in this mine, and had placed it in his charge, will not exempt the company from liability. It would have done so before this act, but

it does not now. There is no evidence that the Kingston Coal Company, or its general superintendent, Mr. Edwards, had personal knowledge of the condition of the roof. So that if you shall find a verdict against the company, it must be upon the evidence as to the negligence of Jones, the inside foreman. Hence the all-important question is, Was Mr. Jones guilty of failing to use ordinary care to furnish a reasonably safe place for this boy to work in ?] [4]

I am asked by counsel for the defense to say to you that as to the defendant, Rosser, the evidence does not disclose negligence that entitles the plaintiff to recover against him. The point is affirmed. The statute of 1891 makes the employer liable for the negligence of the mine foreman, but it does not make the assistant superintendent, or the fellow servant of the mine foreman, responsible for his negligence ; and it is clearly the case here, from the weight of the evidence, that if negligence occurred at all, it was the negligence of Mr. Jones. It was his duty as mine foreman to examine the workings of the mine and to see that it was reasonably safe, and it was not, under the circumstances shown here, the duty of Mr. Rosser to do so. In any event you should render a verdict in favor of Mr. Rosser.

I am also asked to charge you that as to the defendant, Jones, the evidence proves nothing more than an error in judgment on his part, for which he is not liable to answer in damages to the plaintiff, and therefore there can be no recovery against him in this case. I cannot affirm the point, but if you shall find that it was simply an error of judgment upon the part of Mr. Jones, there can be no verdict rendered against him.

The Kingston Coal Company presented these points :

1. That the negligence, if any, shown by the evidence, which occasioned the injury, was the negligence of a fellow servant, for which the company is not liable, and therefore the verdict must be for the defendants. *Answer :* I decline to affirm that for the reason given ; to wit, that the act of 1891, in my opinion, has changed the law upon the subject. [1]

2. That the evidence does not disclose a case of negligence upon the part of the Kingston Coal Company, and the negligence of Rosser and Jones, even if it existed, cannot be lawfully imputed to them, and therefore the verdict must be for

the defendants. *Answer :* That is substantially the same question, and I decline to affirm the point. [2]

3. That under all the evidence the verdict must be for the defendants, the Kingston Coal Company. *Answer :* I decline to affirm that. [3]

The defendants Rosser and Jones presented these points :

1. That as to them the act of 1891 gives no cause of action, and the declaration being under that act, no verdict can be rendered against them. *Answer :* I decline to charge as requested in that point, but state to you that there should not be a verdict against Rosser. [5]

2. That the duty of one fellow servant toward another is nothing more than to exercise ordinary care. *Answer :* This part of the point is affirmed. I have before charged you to this effect.

And that the weight of the evidence in this case shows no lack of ordinary care on the part of Rosser and Jones toward the deceased man, Durkin. *Answer :* I decline to affirm that portion of the point, so far as Jones is concerned ; it is a question of fact for the jury to pass upon. [6]

3. That under all the evidence there can be no verdict against Rosser and Jones. *Answer :* I decline to affirm that as to Jones. I have already instructed you that there can be no verdict against Mr. Rosser. [7]

Verdict and judgment for plaintiff for $727.58 against the Kingston Coal Company and William Jones, and verdict for Morgan Rosser. Kingston Coal Company and William Jones appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*H. W. Palmer* and *Samuel Dickson, Wm. C. Price* with them, for appellants.—The act of 1891 is local and special : (*a*) Because applicable to anthracite mines only ; (*b*) because applicable only to such anthracite mines as employ over ten men ; (*c*) because it is a regulation of labor applicable only to miners and laborers employed in certain anthracite mines ; (*d*) because it is a regulation of mining applicable only. to certain anthracite mines.; (*e*) because under its provisions employers of certain kinds of labor, to wit, labor in certain anthracite mines,

are subject to liability not imposed upon any other employers of labor in or out of mines in the commonwealth, viz, to liability to workmen for negligence of fellow servants resulting in injury: Waddell & Walter v. Simoson, 112 Pa. 567.

In the absence of constitutional prohibition, legislation of this character cannot be sustained: Millett v. People of the State of Illinois, 117 Ill. 294; Cooley, Const. Lim. 1st ed. p. 391; People v. Marx, 99 N. Y. 377.

This action is brought under the statute which gives the action against the operator for negligence of the boss. Such an action cannot be sustained without the aid of the statute. But the bosses are joined in the suit. The statute gives no action against them. If they are liable to fellow servants for injuries arising from their negligence, it would be in a common law action. We have then parties liable only at common law joined with parties liable only under a statute. This is a misjoinder, and the appellant, Jones', first point should have been affirmed: Smith v. Meanor, 16 S. & R. 377; 2 Inst. 200; 4 Burr. 335; Kendrick v. Chicago & Alton R. R., 81 Mo. 521.

*John T. Lenahan, Edward A. Lynch* with him, for appellee.

The contention that the act of 1891 is unconstitutional because it appeals to anthracite mines employing more than ten persons finds no support, either in authority or reason: Act of March 3, 1870, P. L. 3; act of April 18, 1877, P. L. 56; Haddock v. Com., 103 Pa. 245; Cambria Iron Co. v. Shaffer, 8 Atl. Rep. 204; Com. v. Bonnell, 8 Phila. 534; Com v. Wilkes-Barre Coal Co., 29 Leg. Int. 213; Wheeler v. Phila., 77 Pa. 351; Kilgore v. M'Gee, 85 Pa. 401; Lackawanna Twp., 160 Pa. 404.

If a law is general and uniform throughout the state, operating alike upon all persons and localities of a class who are brought within the rules and circumstances provided for it, it is not objectionable as wanting a uniformity of operation: Reading v. Savage, 124 Pa. 328; State v. Berka, 30 N. W. Rep. 267; State v. Hawkins, 44 Ohio, 98; Allen v. Pioneer Press Co., 40 Minn. 117; State v. Hudson, 44 Ohio, 137; M'Aunich v. R. R., 20 Iowa, 338.

The act of 1891 is clearly a reasonable exercise of the police powers of the state: 3 Cooley, Const. Lim. 574; State v. Noyes,

47 Maine, 211; Powell v. Com., 114 Pa. 294; Com. v. Vrooman, 164 Pa. 306; Wright v. Com., 77 Pa. 470; Mayor v. Williams & Price, 15 N. Y. 502; Thorpe v. Rutland R. R., 27 Vt. 148; R. R. v. Husen, 95 U. S. 465; State v. Yopp, 97 N. C. 477; Dabbs v. State, 39 Ark. 353.

The statement or declaration in the case at bar was drawn in pursuance of the procedure act of 1887, P. L. 271. That act abolished special pleading and the distinctions theretofore existing between actions ex delicto. It has always been the law of this state that a joint action could be maintained when an injury resulted from the concurrent negligence of several persons : Klauder v. McGrath, 35 Pa. 128; Weakly v. Royer, 3 Watts, 460; Phelps v. Wait, 30 N. Y. 78; Wright v. Wilcox, 19 Wend. (N. Y.) 343; act of 1891, P. L. 207; Carroll v. Del. & H. C. Co., 89 Pa. 374; Smith v. Meanor, 16 S. & R. 377; Penna. R. R. v. Bock, 93 Pa. 427; Martin v. Stille, 3 Whart. 336.

The court very properly refused to withdraw from the jury the question of Jones's negligence. Even under his own testimony he was guilty of negligence.

*H. W. Palmer* and *Samuel Dickson*, *Wm. C. Price* with them, for appellee, in reply.—If the constitution forbids a special act regulating labor or mining, and this act is a special act, then it cannot be sustained on the ground that it is an exercise of the police power: 18 Am. & Eng. Ency. of Law, 742.

This statute is not a valid exercise of police power: In re Jacobs, 33 Hun, N. Y. 374; Butchers' Union, etc. Co. v. Crescent City, 111 U. S. 746; Wynehamer v. People, 13 N. Y. 378; Pumpelly v. Green Bay Co., 13 Wall. U. S. 166; Yates v. Milwaukee, 10 Wall. 505; Ward v. Maryland, 12 Wall. 430; Bepley v. State, 4 Ind. 264; 18 Am. & Eng. Ency. of Law, 747.

As to the authorities cited by the appellee, it is sufficient to say of the Iowa case, McAninch v. R. R., which is largely quoted and chiefly relied upon, that the constitution of Iowa contains no such prohibition as that upon which we rely.

Mayor v. Williams & Price, 15 N. Y. 502, was a building regulation necessary in aid of the extinguishment of fires, not within constitutional prohibition and clearly within the discretion of the legislature.

Daniels v. Hilgard, 77 Ill. 640, was a case in which owners of coal mines were required to do certain acts, viz., provide maps of their workings which, in the opinion of the legislature, were necessary to the safety of the men employed, and finding no forbidding clause in the constitution, the court decided such a provision within the police power.

A leading case upon the subject is that of the State v. Loomis, 115 Missouri, 307, where it was held that a statute making it a misdemeanor for any corporation engaged in manufacturing or mining to issue in payment of wages to its laborers any order or evidence of indebtedness is class legislation, and violation of the constitutional guaranty of due process of law, and void : Low v. Rees Printing Co., 41 Neb. 127.

OPINION BY MR. JUSTICE WILLIAMS, October 7, 1895 :

The first article of the constitution of this state, known as the bill of rights, declares that all men are possessed of certain inherent and inalienable rights.   One of these is the right to acquire, possess, and protect property.   The preservation of this right requires both that every man should be answerable for his own acts and engagements, and that no man should be required to answer for the acts and engagements of strangers over whom he has no control.   A statute that should impose such a liability, or that should take the property of one person and give it to another, or to the public, without making just compensation therefor, would violate the bill of rights, and would be for that reason unconstitutional and void : Harvey v. Thomas, 10 Watts, 66 ; Ervine's Appeal, 16 Pa. 265 ; Kneass's Appeal, 31 Pa. 87 ; Wolford v. Morgenthal, 91 Pa. 30 ; Godcharles & Co. v. Wigeman, 113 Pa. 431.   It is in furtherance of the right to acquire, possess and protect property that sec. 18, of the bill of rights prohibits the enactment of laws that shall interfere with or impair the obligation of contracts.   The tendency toward class legislation for the protection of particular sorts of labor has been so strong, however, that several statutes have recently been passed that could not be sustained under the provisions of the bill of rights.   Such was the case in Godcharles v. Wigeman, supra.   Such was the case with some recent provisions relating to mechanic's liens, and such is alleged by the appellant to be the case with some of the provisions of the act of 1891, P. L. 176, under which this action was brought.

The title of the act of 1891 is "An act to provide for the health and safety of persons employed in and about the anthracite coal mines of Pennsylvania and for the protection and preservation of property connected therewith." It divides the anthracite region into eight districts, and provides for the appointment by the governor of a competent mine inspector in each district who shall have a general oversight of mining operations within his district. It creates an examining board for each district with power to examine candidates and recommend such as they shall deem qualified for the position of mine foreman to the secretary of internal affairs. It is made the duty of this officer to issue certificates to those who apply therefor, and have been recommended by the board of examiners. Article 8, sec. 1, declares that no person "shall be permitted to act as mine foreman or assistant mine foreman of any coal mines or colliery" who has not been examined by the board of examiners, recommended to the secretary of internal affairs, and provided by that officer with a certificate. The employment of a certified mine foreman is made obligatory upon all mine owners and operators, and a failure to do so is punished by a fine of twenty dollars per day, which may be collected from the owner, the operator, or the superintendent in charge of the mine. The duties of the mine foreman are prescribed by the act, and the owner or operator of the mines cannot interfere with them. He is especially to "visit and examine every working place in the mine at least once every alternate day while the men of such place are or should be at work, and direct that each and every working place is properly secured by props or timber, and that safety in all respects is assured by directing that all loose coal or rock shall be pulled down or secured, and that no person shall be permitted to work in an unsafe place unless it be for the purpose of making it secure."

The mine foreman is also required to examine at least once every day "all slopes, shafts, main roads, ways, signal apparatus, pulleys, and timbering, and see that they are in safe and efficient working condition." After having thus most effectually taken the management of his mining operations out of his hands and committed it to officers of its own creation, whose employment is made compulsory upon him, the statute in sec. 8, of art. 17 imposes upon the mine owner a liability for the neg-

lect or incompetency of the men whom he is compelled to employ in these words : " That for any injury to person or property occasioned by any violation of this act or any failure to comply with its provisions by any . . . . mine foreman a right of action shall accrue to the party injured against said owner or operator for any direct damages he may have sustained thereby ; and in case of loss of life by reason of such neglect or failure aforesaid a right of action shall accrue to the widow and lineal heirs of the person whose life shall be lost for like recovery of damages for the injury they shall have sustained." This statute regarded as a whole is an 'extraordinary piece of legislation. Through it the lawmakers say to the mine owner " You cannot be trusted to manage your own business. Left to yourself you will not properly care for your own employees. We will determine what you shall do. In order to make it certain that our directions are obeyed we will set a mine foreman over your mines with authority to direct the manner in which your operations shall be conducted, and what precautions shall be taken for the safety of your employees. You shall take for this position a man whom we certify to as competent. You shall pay him his salary. What he orders done in your mines you shall pay for. If notwithstanding our certificate he turns out to be incompetent or untrustworthy you shall be responsible for his ignorance or negligence." Under the operation of this statute the mine foreman represents the commonwealth. The state insists on his employment by the mine owner, and in the name of the police power turns over to him the determination of all questions relating to the comfort and the security of the miners, and invests him with the power to compel compliance with his directions. Incredible as it may seem, obedience on the part of the mine owner does not protect him, but if the mine foreman fails to do properly what the statute directs him to do the mine owner is declared to be responsible for all the consequences of the incompetency of the representative of the state. This is a strong case of binding the consequences of the fault or folly of one man upon the shoulders of another. This is worse than taxation without representation. It is civil responsibility without blame and for the fault of another. The same conclusion may be reached by another road. It has been long settled that a mining boss or foreman is a fellow servant with

the other employees of the same master engaged in a common business, and that the master is not liable for an injury caused by the negligence of such mining boss :. Lehigh Valley Coal Company v. Jones, 86 Pa. 432 ; Delaware & Hudson Canal Co. v. Carroll, 89 Pa. 374 ; Waddell et al. v. Simoson and Wife, 112 Pa. 567.

The duty of the mine owner is to employ competent bosses or foremen to direct his operations. When he does this he discharges the full measure of his duty to his employees and he is not liable for an injury arising from the negligence of the foreman : Waddell et al. v.·Simoson and Wife, supra. A vice principal is one to whom an employer delegates the performance of duties which the law imposes on him, and the employer is responsible because the duty is his own. As to the acts of the workmen and the manner in which they do their work, the duty of the employer is to employ persons who are reasonably competent to do the work assigned them, and if he finds himself mistaken in regard to their competency, to discharge them when the mistake is discovered. But he is not responsible for the consequences of their negligence as these may affect each other : Ross v. Walker, 139 Pa. 42. Now the act of 1891 undertakes to reverse the settled law upon this subject and declare that the employer shall be responsible for an injury to an employee resulting from the negligence of a fellow workman. Prior to the act of 1891 the man whose negligence caused the injury was alone liable to respond in damages. He might not always have property out of which a judgment could be collected, but the plaintiff must in any case take his chances. of the solvency of the defendant against whom his cause of action lies. The act of 1891 undertakes to furnish a responsible defendant for the injured person to pursue. Passing over the head of the fellow servant at whose hands the injury was received, it fastens on the owner of the property on which the accident happened, and declares him to be the guilty person on whose head the consequences of the accident shall fall. To see the true character of this legislation we must keep both lines of objection in mind. We must remember that the injury complained of is due to the negligence of a fellow workman for which the master is responsible neither in law nor morals. We must also remember that this fellow workman has been.

designated by the state, his duties defined and his powers conferred by statute, and his employment made compulsory under heavy penalties by the same statute. Finally we must remember that it is the negligence of this fellow servant whose competency the state has certified, and whose employment the state has compelled, for which the employer is made liable. The State says: " He is competent. You must employ him. You shall surrender to his control the arrangements for the security of your employees." It then says in effect, " If we impose upon you by certifying to the competency of an incompetent man, or if the man to whom we commit the conduct of your mines neglects his duty you shall pay for our mistake and for his negligence." We have no doubt that so much, at least, of sec. 8 of art. 17 of the act of 1891 as imposes liability on the mine owner for the failure of the foreman to comply with the provisions of the act which compels his employment and defines his duties is unconstitutional and void.

This disposes of this appeal so far as the Kingston Coal Company is concerned. But why should the certified mine foreman be relieved from the consequences of his negligence? The jury have found that the injury was due to his want of attention to his proper duties, and his liability is clear without regard to our mining laws. But the statute required him to examine the roads and ways in use in the mine each day. He knew the film of rock separating the upper from the lower working was but eight feet thick at best. He knew that the supports for this film were not in line with each other in the upper and lower workings. He knew that layers of the rock were falling off, that the thickness of the floor was reduced under the way on which the accident occurred to about five feet, and that not far away it had fallen down into the lower working; yet with all this knowledge he did nothing, so far as we can learn, to increase the security of the way. Whether his conduct be considered with reference to the statute, or regardless of it, his failure to do what he must have known to be necessary was a neglect of duty such as should render him liable to his fellow servant who has suffered from it. Some difficulty has been suggested growing out of the pleadings, but the declaration is not before us. We cannot determine therefore whether an amendment is necessary in order to sustain the judgment against him.

We are not prepared to hold the act of 1891 to be unconstitutional as a whole. It relates to all anthracite coal mines and defines what shall be regarded as such mines. Coal may be taken out of the ground by farm owners for their own use, or it may be taken in such small quantities and for such local purposes as to make the application of the mining laws to the operations so conducted not only unnecessary but burdensome to the extent of absolute prohibition. Such limited or incipient operations are not within the mischief to remedy which the mining laws were devised. They are ordinarily conducted for purposes of exploration or for family supply, and ought not to be classed with operations conducted for the supply of the public. The business of coal mining like that of insurance or banking may be defined by the legislature. The definition found in the act of 1891 seems to us reasonable, to be within the fair limits of a legislative definition, and to exclude only such operations as are too small to make the general regulations provided by the act applicable to them. The ground on which we place our judgment is not therefore that the act is local, but that the provisions of it which we have considered are in violation of the bill of rights. The judgment against Kingston Coal Company is reversed for reasons that are fatal to a recovery against it.

The judgment against Wm. Jones is affirmed.