445 A.2d 1194

**Vincent Louis BACCHETTA**

v.

**Lena Troiani BACCHETTA, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 18, 1982.

Decided May 26, 1982.

228

William Litvin, David C. Becker, West Chester, for appellee.

Raymond T. Cullen, Albert Momjian, Philadelphia, amicus curiae in support of appellant.

Gary R. Block, A. Bruce Niccolo, Arthur A. Moorshead, Devon, for appellant.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an action for divorce governed by Pennsylvania's new Divorce Code, Act of April 2, 1980, P.L. 63, § 101 et seq., 23 P.S. § 101 et seq. (Supp.1981) (effective July 1, 1980). The Court of Common Pleas of Chester County refused the request of appellant Lena Troiani Bacchetta, pursuant to section 401(d) of the Code, for equitable distribution of property acquired before the Code's effective date on the belief that the requested distribution would unconstitutionally deprive appellee Vincent Louis Bacchetta of his property rights. Upon application of appellant, this Court assumed plenary jurisdiction. We conclude that the Legislature's clear direction that all property acquired during the marriage of the parties shall be subject to the equitable distribution provision of the Divorce Code is a constitutionally permissible exercise of the Legislature's authority to regulate the marital relationship. Hence we reverse and remand for proceedings consistent with this opinion.*

* This case was reassigned to this writer on April 26, 1982.

I

■ The language of the Divorce Code makes clear that in actions governed by the Code all "provisions of the act," including those relating to the equitable distribution of marital property, shall apply.[1]

"Marital property" subject to equitable distribution includes "all property acquired by either party during the marriage." 23 P.S. § 401(e). There is no basis in the statute to qualify this legislative mandate by restricting the applicability of the equitable distribution requirement to only that marital property acquired after July 1, 1980, the effective date of the Code. Indeed, of the seven specific exceptions to the equitable distribution provision, none demonstrates the slightest legislative intention that the date of acquisition during marriage shall be at all relevant.[2]

**1.** Section 103 of the Code provides:

"The provisions of this act shall apply to all cases, whether the cause for divorce or annulment arose prior or subsequent to enactment of this act. The provisions of this act shall not affect any suit or action pending, but the same may be proceeded with and concluded either under the laws in existence when such suit or action was instituted, notwithstanding the repeal of such laws by this act, or, upon application granted, under the provisions of this act. The provisions of this act shall not apply to any case in which a decree has been rendered prior to the effective date of the act." 23 P.S. § 103.

**2.** Section 401 exempts from "marital property":

"(1) Property acquired in exchange for property acquired prior to the marriage except for the increase in value during the marriage. (2) Property excluded by valid agreement of the parties entered into before, during or after the marriage. (3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage. (4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce. (5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced. (6) Veterans' benefits exempt from attachment, levy or seizure pursuant to [38 U.S.C. § 3101] except for those benefits received by a veteran where such veteran has waived a portion of his military retirement pay in order to receive Veteran's Compensation.

Moreover, the stated purpose of the new Divorce Code is to deal effectively with the "realities of the matrimonial experience" by giving "primary consideration to the welfare of the family," "mitigat[ing] the harm to spouses and their children caused by the legal dissolution of the marriage," and effectuating "economic justice" as well as "a fair and just determination and settlement of . . . property rights." 23 P.S. § 102(a). Where, as here and in most cases for years to come, the parties were married before the enactment of the Divorce Code, it would be unreasonable to interpret the Divorce Code as providing for equitable distribution of only that property acquired after the Code's effective date. Such an interpretation would impose the unmanageable burden on courts and litigants of determining which properties were acquired before, and which after, the effective date of the Code. Such an interpretation would also substantially deny the benefits of the Divorce Code to spouses in marriages in existence at the time of the Code's enactment, thereby prolonging for at least a generation the very inequity the Legislature sought to remedy. In view of the stated purposes of the Code, it must be concluded that the Legislature's definition of marital property as "all property acquired by either party during the marriage" includes property acquired before the effective date of the Code.

## II

The trial court properly recognized that the equitable distribution provision of the Divorce Code applies to all property acquired during the marriage without regard to the Code's effective date. However, the trial court erroneously held that, under *Willcox v. Penn Mutual Life Insurance Co.*, 357 Pa. 581, 55 A.2d 521 (1947), such an application of the equitable distribution provision is unconstitutional.

*Willcox* considered the constitutionality of those provisions of the Community Property Law of 1947 designed to confer

(7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the time proceedings for the divorce are commenced."
23 P.S. §§ 401(e)(1)–(7).

upon Pennsylvania spouses a federal income tax advantage similar to that enjoyed in states which already had community property laws. The Community Property Law deemed the income from properties acquired and owned by one spouse prior to the Law's effective date to be the common property of both spouses.[3] The statute applied to all marriages, and automatically bestowed upon each spouse an "undivided one-half interest" in income from property owned separately by the other spouse. This Court concluded that this automatic bestowal of a one-half interest in separate property of another was an unconstitutional deprivation of property, in violation of due process.

In enacting the equitable distribution provision of the Divorce Code, the Legislature sought to accomplish far different objectives than were sought in enacting the Community Property Law. Prior to the enactment of the Divorce Code, in many marriages a nonworking spouse contributed years of service to the family, but did not realize any significant economic gain. Thus, upon divorce, nonworking spouses, who frequently had no marketable skills, were left with few, if any assets of their own and faced the risk of becoming public charges. By providing for the distribution of property acquired during the marriage, the Divorce Code permits the correction of the economic injustices which often arose under former law and allows nonworking spouses to become self-supporting with the least financial hardship possible.

■ The objective of providing for orderly transition upon the dissolution of marriages is manifestly within the Legislature's broad control over the marital relationship:

"Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a

3. In a community property state, half of the income earned by one spouse could be reported on the separate tax return of the other spouse. After the enactment of the Community Property Law of 1947, Congress provided for the same result in all non-community property states by adjusting the income tax rate structure applied to spouses filing joint returns. See Stanley & Kilcullen, Federal Income Tax Law § 1, p. 2–2 (1975).

people than any other institution, has always been subject to the control of the legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution."

*Maynard v. Hill,* 125 U.S. 190, 205, 8 S.Ct. 723, 726, 31 L.Ed. 654 (1888). As *Willcox* itself recognized, it is within the Legislature's prerogative in exercising the police power to provide for the distribution of property upon divorce. See 357 Pa. at 593, 55 A.2d at 527.

" '[Neither] property rights nor contract rights are absolute . . . . Equally fundamental with the private right is that of the public to regulate it in the common interest.' " *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 84, 100 S.Ct. 2035, 2042, 64 L.Ed.2d 741 (1980), quoting *Nebbia v. New York,* 291 U.S. 502, 523, 54 S.Ct. 505, 510–11, 78 L.Ed. 940 (1934). That public right, the "police power,"

"is one of the 'most essential powers of government . . . . ' *Hadacheck v. Sebastian,* 239 U.S. 394, 410, 36 S.Ct. 143, 145, 60 L.Ed. 348 (1915). * * * The police power is fundamental because it enables 'civil society' to respond in an appropriate and effective fashion to changing political, economic, and social circumstances, and thus to maintain its vitality and order. See, e.g., *Mugler v. Kansas,* 123 U.S. 623, 668, 8 S.Ct. 273, 301, 31 L.Ed. 205 (1887). 'The police power of the state [must therefore be] . . . as comprehensive as the demands of society require under the circumstances.' [*Commonwealth v. Barnes & Tucker,* 472 Pa. 115, 126, 371 A.2d 461, 467 (1977) (*Barnes & Tucker II*).] * * * Indeed, it is the state's least limitable power. See *Hadacheck v. Sebastian,* supra, at 410, 36 S.Ct. at 145."

*National Wood Preservers, Inc. v. Commonwealth of Pennsylvania, Dep't of Environmental Resources,* 489 Pa. 221, 231, 414 A.2d 37, 42 (footnote omitted), appeal dismissed for want of substantial federal question, 449 U.S. 803, 101 S.Ct. 47, 66 L.Ed.2d 7 (1980).

Due process requires that an exercise of the police power " 'shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the objective sought to be [obtained.]' " *Prune-Yard Shopping Center v. Robins*, supra, 447 U.S. at 84, 100 S.Ct. at 2042, quoting *Nebbia v. New York*, supra, 291 U.S. at 525, 54 S.Ct. at 511. Accord, *National Wood Preservers, Inc. v. Commonwealth of Pennsylvania, Dep't of Environmental Resources*, supra, 489 Pa. at 232–33, 414 A.2d at 43; *DePaul v. Kauffman*, 441 Pa. 386, 394, 272 A.2d 500, 504 (1971). Here, the means selected by the Legislature to mitigate the economic harms upon divorce unquestionably withstand constitutional scrutiny.

As in other jurisdictions, equitable distribution occurs only upon divorce, when the need for economic assistance to the spouse with lesser resources is real and immediate. See *Kujawinski v. Kujawinski*, 71 Ill.2d 563, 17 Ill.Dec. 801, 376 N.E.2d 1382 (1978); *Fournier v. Fournier*, 376 A.2d 100 (Me.1977); *Rothman v. Rothman*, 65 N.J. 219, 320 A.2d 496 (1974). The Code mandates that marital property be distributed "in such proportions as the court deems just after considering all relevant factors." 23 P.S. § 401(d). As the Supreme Court of New Jersey has observed, such a court-order distribution "must by its terms be 'equitable.' " *Rothman v. Rothman*, supra, 65 N.J. at 230, 320 A.2d at 502. Specifically excluded from property subject to distribution is that property which a party has "sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced." 23 P.S. § 401(e)(5). See also id. at § 401(e)(7) (property excluded to extent encumbered in good faith for value).

To aid the court in the exercise of its equitable discretion, the Legislature has provided ten specific factors for the court's consideration:

"(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective."

23 P.S. §§ 401(d)(1)–(10). A party claiming that the court should take into account one of the above factors must of course establish the relevance of the factor to the particular case. And in exercising its discretion, the court is required to set forth the "reason or reasons for the distribution ordered." 23 P.S. § 404. This provision not only serves to enhance the rationality of decisionmaking but also permits effective appellate review. Cf. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977) (court required to articulate reasons for sentence). Thus, equitable distribution of property acquired during the marriage occurs only upon divorce, only in cases where it is justified, and only in amounts warranted by the facts.

Because this effective, carefully tailored provision unquestionably applies to marital property acquired before the Code's effective date, and because such an application is constitutional, the order of the Court of Common Pleas of

Chester County is reversed and the record remanded to the trial court for proceedings consistent with this opinion.[4]

Order reversed and record remanded.

NIX, J., files a dissenting opinion.

FLAHERTY, J., files a dissenting opinion in which LARSEN, J., joins.

NIX, Justice, dissenting.

I am fully in agreement with Mr. Justice Flaherty in his conclusion that there was no justification for finding a legislative intention in the Pennsylvania New Divorce Code, Act of April 2, 1980, P.L. 63, § 101 et seq., 23 P.S. § 101 et seq. (Supp.1981) (effective July 1, 1980) to apply the concept that equitable distribution of property to property acquired by either spouse before the effective date of the Code. It is a fundamental principle of statutory interpretation in this Commonwealth that a statute must not be construed to be retroactive in its application unless such an intent is clearly and manifestly apparent from the language of that provision, 1 Pa.C.S.A. § 1926. The language of the Code is at best neutral in this regard. This neutrality cannot be overcome by the social philosophy of some of the members of this Court.

It is equally basic in statutory interpretation that legislation should not be interpreted in such a manner that it runs afoul of constitutional mandate. 1 Pa.C.S.A. § 1922(3); *Wajert v. State Ethics Commission*, 491 Pa. 255, 420 A.2d 439 (1980); *Commonwealth ex rel. Dermendzin v. Myers*, 397 Pa. 607, 156 A.2d 804 (1959); *Tremont Twp. Sch. Dist. v. Anth. Coal Co.*, 364 Pa. 591, 73 A.2d 670 (1950). In my judgment, the retroactive interpretation sought to be imposed by the majority on the language of the Code renders it constitutionally infirm.

4. We do not address appellant's claims that the trial court abused its discretion in awarding an allegedly insufficient amount of alimony and that the trial court improperly determined that, for purposes of 23 P.S. § 401(e)(4), the parties had become "separated." If an appeal is taken following the trial court's determination upon remand, appellant may, of course, renew these claims.

The Constitution of this Commonwealth in the *very first* article of the Declaration of Rights sets forth the "Inherent Rights of Mankind." Therein it was provided that each resident of this Commonwealth should "have certain inherent and indefeasible rights, among which are those..., of acquiring, possessing and protecting property...". In defining the essence of this concept, this Court early noted:

> If the legislature possessed an irresponsible power over every [person's] private estate ... all inducement to acquisition, to industry and economy would be removed...
>
> If the government is interdicted from taking private property even for public use without just compensation, how can the legislature take it from one [person] *and dispose of it as they think fit.* The great principle is, that a [person's] property is [their] own, and that [person] shall enjoy it according to [their] pleasure (injuring no other...) until it is proved in a due process of law that it ... belongs to another. (Emphasis added)
>
> *Ervine's Appeal*, 16 Pa. 256, 263–64 (1851)

I fully appreciate that property rights are not absolute and that the public may regulate in the common interest. *Prune Yard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980): However, that regulation must be in conformity with due process.

> "The relation of husband and wife is ... formed subject to the power of the state to control and regulate both that relation and the property rights directly connected with it; by such legislation as does not violate those fundamental principles which have been established for the protection of private and personal rights against illegal interference."
>
> *Executors v. Kilgore*, 145 U.S. 487, 491, 12 S.Ct. 943, 944, 36 L.Ed. 786 (1892)

The admittedly serious concern that a party to a failing marriage not be unjustly treated in the dissolution of the relationship may be addressed by providing alimony, support and maintenance. Legislation may also be enacted providing for a common ownership by a present or future spouse in

property acquired by the other member to the relationship after the effective date of the enactment. *See Willcox v. Penn Mutual Life Insurance Co.,* 357 Pa. 581, 55 A.2d 521 (1947). There is no question that due process, as we have defined it, permits a remedy against a potential injustice to an ill-treated spouse.

The constitutional concern is raised by an attempt to retroactively divest vested property rights of one of the spouses in favor of the other. Regardless of the laudatory purposes sought to be achieved, such a means offends well recognized constitutional mandates. Where one voluntarily enters into a marital relationship and is aware that such a step may affect ownership in property acquired thereafter, the decision to undertake such a step is a knowing and voluntary one. Here the retroactive application forces an involuntary divestment of property rights without due process of law.

I, therefore, dissent.

FLAHERTY, Justice, dissenting.

I dissent. On April 23, 1981, in the Court of Common Pleas of the Fifteenth Judicial District, a decree was entered dissolving the twenty-six year marriage of the appellant, Lena Troiani Bacchetta, and the appellee, Vincent Louis Bacchetta. Appellant was awarded alimony, but was denied equitable division of marital property on grounds that the Divorce Code of 1980 [1] [hereinafter Code] provision authorizing such a division effected a retroactive and unconstitutional deprivation of property. The instant appeal ensued.

Regarding the distribution of spouses' property upon divorce, the Code, 23 P.S. § 401(d)–(f), provides:

(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions

1. Act of April 2, 1980, P.L. 63, No. 26, 23 P.S. § 101 *et seq.* (Supp. 1981).

as the court deems just after considering all relevant factors including . . .[2]

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except. . .[3]

**2.** The factors set forth in 23 P.S. § 401(d) to be considered by the court in the equitable distribution process include:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

**3.** Under 23 P.S. § 401(e), the following are excepted from the definition of "marital property":

(1) Property acquired in exchange for property acquired prior to the marriage except for the increase in value during the marriage.

(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.

(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

(4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce.

(5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced.

(6) Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958, Public Law 85–857, 72 Statute 1229 [38 U.S.C.A. § 3101], as amended, except for those benefits received by a veteran where such veteran has waived a portion of his military retirement pay in order to receive Veteran's Compensation.

(7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the time proceedings for the divorce are commenced.

(f) All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e).

The principal issue on appeal is whether the "marital property" subject to equitable distribution under the foregoing provision includes property acquired prior to July 1, 1980, the effective date of the Code. By construing the Code as rendering such prior-acquired property subject to equitable distribution, thereby according 23 P.S. § 401(d)–(f) a retroactive rather than merely prospective effect, vested property rights existing before the Code's effective date could be abrogated by a court decree transferring property unconditionally owned by one spouse to the sole ownership of the other. Likewise, a spouse's interest as a joint tenant, or tenant by the entirety, could be extinguished by being transferred to the other spouse. Prior to the Code's effective date, the statutory and common law of the Commonwealth governed the status of spouses' assets upon divorce. Hence, propertied spouses seeking to protect assets against loss upon divorce relied upon the expectation that property would remain as it had been legally titled. See *DiFlorido v. DiFlorido*, 459 Pa. 641, 331 A.2d 174 (1975).

The constitutional issue raised by a retroactive application, permitting the deprivation of property rights vested prior to the Code's effective date, is manifest. See *Willcox v. Penn Mutual Life Insurance Co.*, 357 Pa. 581, 590–594, 55 A.2d 521, 526–528 (1947).[4] In ascertaining legislative intent

---

4. Regarding the application of a statute so as to divest rights vested prior to the statute's effective date, this Court, in *Willcox v. Penn Mutual Life Insurance Co.*, 357 Pa. at 591, 55 A.2d at 526, stated:
"In *Durkin v. Kingston Coal Co.*, 171 Pa. 193, 199, 33 A. 237, 29 L.R.A. 808, 50 Am.St.Rep. 801, it was declared that 'A statute * * * that should take the property of one person and give it to another or to the public, without making just compensation therefor, would violate the bill of rights, and would be, for that reason, unconstitu-

as to retroactive application, the legislature is presumed not to have intended to violate the Constitution of the United States or of this Commonwealth. Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1922(3) (Supp.1981). However, as this Court recently stated in *Ballou v. State Ethics Commission,* 496 Pa. 127, 129, 436 A.2d 186, 187 (1981), "[i]t is well settled that when a case raises both constitutional and non-constitutional issues, a court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds." Hence, unless absolutely necessary for resolution of a controversy, a constitutional question will not be decided. *Misitis v. Steel City Piping Co.,* 441 Pa. 339, 341, 272 A.2d 883, 884 (1971). After careful examination of the Code, it is apparent that the division of marital property provided for therein is intended to be applied prospectively rather than retroactively; thus, the issue of whether a retroactive application would be constitutional need not be determined.

The opinion authored by Mr. Justice Roberts, construing the marital property distribution provision as having a retroactive effect, rests upon the conclusion that "[t]here is no basis *in the statute*" (emphasis added) for limiting the provision's retroactive effect. Focusing only upon whether there is an express limitation "in the statute" is a misdirected approach to determining the question of a statute's retroactive effect. The approach ignores longstanding precedents of this Court, as well as express directives of the legislature, which clearly establish that there need not be any language *in* a statute limiting its retroactive application

tional and void.' And in *E.T. Fraim Lock Co. v. Shimer,* 43 Pa.Super. 221, 224, it was said that 'An act of assembly which operates retrospectively to take the property of John Doe and give it to Richard Roe, is prohibited by the fundamental law.' It is clear, then, that had the legislature attempted by the Community Property Law to transform property then owned by either spouse from separate into community property, such a provision could not have stood the test of constitutionality."

It is equally clear that a legislative scheme for court ordered transfers between spouses, upon divorce, of property already owned by the spouses at the effective date of the Divorce Code would be no less offensive to constitutional standards.

in order for a determination to be reached that its effect is prospective only.

A retroactive interpretation of 23 P.S. § 401(d)–(f) has been expressly disfavored by the legislature, as the Statutory Construction Act of 1972 provides:

§ 1926.   Presumption against retroactive effect

No statute shall [be] construed to be retroactive unless *clearly* and *manifestly* so intended by the General Assembly.

(Emphasis Added.)   Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1926 (Supp.1981).   As Mr. Justice Roberts stated in *Commonwealth v. Story*, 497 Pa. 273, 440 A.2d 488, 489 (1981), "[t]he prohibition against a retroactive construction of a statute is long-standing."   Statutes impairing vested substantive rights must be construed prospectively, except where legislative intent that they shall act retroactively is *so clear as to preclude all question* of retroactive intendment.   *Smith v. Fenner*, 399 Pa. 633, 640, 161 A.2d 150, 154 (1960);   See also *Estate of Bertolet*, 483 Pa. 496, 502, 397 A.2d 776, 779 (1979);   *Misitis v. Steel City Piping Co.*, 441 Pa. at 342, 272 A.2d at 884.   This principle is particularly applicable to "laws which, while operating upon events taking place in the future, divest rights, *particularly property rights*, which were vested anterior to the time of the enactment of such law."   (Emphasis added.)   *Commonwealth ex rel. Greenawalt v. Greenawalt*, 347 Pa. 510, 512, 32 A.2d 757, 758 (1943).   In the instant case, 23 P.S. § 401(d) authorizes divestment of property rights by "operating upon events taking place in the future," divorces being the future events in question;   hence, absent statutory language so clear as to preclude all question of retroactive intendment, the provision must be interpreted as affecting rights vesting prospectively, alone.

Clearly, 23 P.S. § 401(d)–(f) is devoid of any express language rendering property acquired prior to the Code's effective date subject to the same equitable division process as is prospectively acquired property.   By defining the subject "marital property" as "all property acquired by either

party during the marriage", 23 P.S. § 401(e) fails to clarify whether "acquired" means theretofore acquired, thereafter acquired, or both. When the language of a statute is general, so that it might be accorded both retroactive and prospective operation, it will be held to be prospective only, so as not to affect property interests in existence at the time of its passage. *Commonwealth ex rel. Greenawalt v. Greenawalt*, 347 Pa. at 512–513, 32 A.2d at 758–759. Nowhere in the property distribution provision, or elsewhere in the Code, is there contained language which "clearly and manifestly" sets forth legislative intent in a manner *so clear as to preclude all question* of retroactive intendment. See 1 Pa.C. S.A. § 1926, *supra; Smith v. Fenner, supra.* Indeed, the contemplated retroactive or prospective application of the property distribution provision is simply not addressed in the statute. The guide to construction set forth in 23 P.S. § 103, which merely establishes that pre-Code events may constitute grounds for divorce under the Code, provides in pertinent part: "The provisions of this act shall apply to all cases, *whether the cause* for divorce or annulment *arose prior or subsequent to enactment* of this act." (Emphasis added.) This guide to construction is not to be interpreted so broadly as to require that the property distribution provision of the Code shall, in addition to being applicable regardless of the date when grounds for divorce arose, be interpreted as having a retroactive, as opposed to solely prospective, effect upon properties acquired. Specifically, the construction accorded 23 P.S. § 103 is governed by the Statutory Construction Act of 1972, which provides: "All provisions of a statute of the classes hereafter enumerated shall be strictly construed: ... (2) Retroactive provisions." Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1928(b) (Supp.1981). "Even where the General Assembly intends a retroactive construction, the statute is to be 'strictly construed.'" *Commonwealth v. Story*, 497 Pa. at 276, 440 A.2d at 489. Hence, guided by settled rules of statutory construction, there is no basis to conclude that the legislature intended property acquired prior to the Code's effective

244

date to be subject to the equitable distribution process set forth in 23 P.S. § 401(d)–(f).[5]

LARSEN, J., joins this dissenting opinion.

5. We note that the Code's alimony provision, 23 P.S. § 501, directs that the extent of the parties' assets be considered as a factor in determining the amount of alimony payable. Inherently, therefore, an alimony award will be affected by whether the property distribution provision has yielded an award of property to the spouse in need.