## Wagner v. Wagner

Robert G. Bigham, Elwood E. Swam, for plaintiff.
Eugene R. Hartman, for defendant.

SPICER, P.J., November 1, 1983 — The parties to this action were married July 21, 1941. They entered into a separation agreement on August 9, 1957, and each released interests in property of the other, including after acquired property. Plaintiff executed a deed releasing future dower interests August 26, 1957.

On November 4, 1974, defendant contracted in his own name for the purchase of real estate in Carroll County, Md. When settlement occurred December 12, 1974, the property was titled in both the names of plaintiff and defendant and both signed a purchase money mortgage in the amount of $25,000. The purchase price was $40,500.

This action in divorce was bifurcated September 10, 1982, when the court entered a decree of divorce and reserved jurisdiction to determine equitable distribution. The Master appointed for that purpose filed his report February 8, 1983. For various reasons, the Master made no findings based upon credibility and set forth his findings in narrative form.

Defendant has filed exceptions to the Master's report and recommendations. One exception deals with the manner in which the Master set forth his findings. Since the Master followed Pa.R.C.P. 1920.54(a), this exception will be dismissed without discussion. Other exceptions require us to continue a consideration of the facts.

The property was sold May 26, 1978. Net proceeds remaining after payment of the mortgage and costs of sale were $33,646.96. The settlement attorney issued a check payable to both parties. Plaintiff endorsed this check and delivered it to defendant. There is some dispute concerning the circumstances of the endorsement and delivery. Plaintiff said defendant told her he would tear up the check if she did not sign but if she signed, he would pay the mortgage and give her half the balance. Defendant denied this. He said there was a squabble for almost two days after settlement with plaintiff making various demands for money. However, he said she knew he had incurred certain debts in connection with the acquisition of the property and finally agreed to unconditionally give him the entire net proceeds. Defendant denied saying that he was going to pay the mortgage and said plaintiff knew the mortgage had been paid from the settlement proceeds. She signed the settlement sheet.

Part of this testimony was contained in a deposition made part of this case. The Master did not con-

sider the testimony to be important and made no determination which version was correct. It would seem to the court that defendant was correct in saying plaintiff knew the mortgage was paid from settlement funds. The settlement sheet clearly shows this and the net proceeds of $33,646.96 are so much less than the sale price of $58,000 it would appear certain plaintiff knew the mortgage to have been paid. On the other hand, in light of plaintiff's financial condition, it would seem unlikely she would surrender all claim to the money. A more likely explanation is that she delivered the check so that defendant could pay the loans he had made to buy the property.

The Master also made no determination of the contributions of the parties in the acquisition of the parties. He followed this course because of his finding that a gift had been made to to the marital estate and contributions were immaterial. Nonetheless, it is clear that defendant contributed almost all of the purchase price and plaintiff's contributions were, by comparison, small.

The Master then concluded that the net proceeds were marital property and apportioned them 65 percent for plaintiff and 35 percent for defendant. The Master made no attempt to determine if any of the proceeds were in existence at the time of divorce or whether there were assets to which the proceeds could be traced.

When the court heard oral argument, it allowed defendant to continue argument for purposes of considering whether the Divorce Code, 23 P.S. §101 et seq., could apply to funds acquired and disposed of prior to the effective date of the statute. Plaintiff has argued strenuously that defendant has waived the right to raise this argument.

There are two lower court decisions which say that assets acquired during marriage and disposed of prior to the effective date of the Divorce Code are subject, nevertheless, to equitable distribution. Imperato v. Imperato, 31 Chester Co. Rep. 417 (1983); Pangallo v. Pangallo, in the Court of Common Pleas of Westmoreland County No. 8650 of 1979 (1983). We can certainly agree that the Supreme Court has made it plain that the Code applies generally to property acquired prior to marriage. Bacchetta v. Bacchetta, 498 Pa. 227, 445 A.2d 1194 (1982). It would appear equally clear that if there is identifiable property subject to equitable distribution, property disposed of should be considered in awarding equitable distribution. That property might be characterized as either dissipated assets or as property disposed of in good faith for value, 23 P.S. §401(d) (7) and (e) (5). However, we have great difficulty in holding that property disposed of long before the code was contemplated by the legislature can be the sole basis for equitable distribution. The power of the court is limited by the terms of 23 P.S. §401(b) to "disposing of existing property rights."

Even so, we find that defendant has waived this argument. The Code invests the court with full equity powers. Krenzelak v. Krenzelak,      Pa. Super.     , 453 A.2d 998 (1982). We interpret this power to include the power to trace. The Master in this case specifically commented he had made no effort to trace the proceeds and the parties did not address the issue. If existing property rights had been determined to exist, equitable distribution would be appropriate. To sustain defendant's argument at this point would necessitate sending the case back to the Master and extending an already lengthy proceeding.

Defendant's contentions at the Master's level dealt mostly with the effect of the 1957 agreement on the property and its proceeds. There is no doubt that the 1957 agreement was valid and bound the parties. It did not, however, prevent them from entering into different arrangements later with respect to particular pieces of property. By placing the property in joint names it is clear they contemplated a different arrangement. The real estate and its proceeds were not excluded from marital property by the 1957 agreement in accordance with 23 P.S. §401(e) (4). On the contrary, even though the defendant contributed the significant purchase price, placing the property in joint names had the effect of a gift to the marital estate. Burry v. Burry, 111 Montgomery Co. L. R. 330 (1982); Stanton v. Stanton, 112 Montgomery Co. L. R. 234 (1983).

As we have previously mentioned, the Master did not inquire into many areas of fact including how defendant disposed of the net proceeds of sale. Defendant's arguments that he should be given credit for property disposed of in good faith and for value thus fell on deaf ears. The Master's decision was apparently based upon the fact that defendant's expenditures were for personal and not marital debts.

There is some indication that the exclusion of section 401(e) (5) applies only to property held individually: 1 Rounick, Pennsylvania Matrimonial Practice §18:38 (1983). Perhaps, this is true in light of the legislative history of the section. The language of section 401(e), referring to "property acquired by either party" also lends some substance to this view. However, the same language is used in section 401(f) in which the legislature has clearly made the code title blind. We are inclined to think that title blindness pervades the Code and applies to

Section 401(e) despite what the legislator said in proposing the provision.

However, this treatment is unnecessry to our decision because of what occurred in this case. The real estate was disposed of by both parties and should not be the subject of our inquiry. It is the proceeds of that sale which command our attention. The facts make clear that these proceeds were transferred by the actions of both and that they were held by defendant alone.

It appears to the court that the Master prematurely concluded his inquiry with the correct assumption that the real estate and proceeds were marital property. He gave no consideration to the later transfer of those proceeds to one person. We cannot, in logic, consider one transfer (the real estate) and find the rights of the parties to have been frozen without regard to what both did later. When defendant paid his debts he was dealing with property held individually by virtue of the joint endorsement.

It might appear that the 1957 agreement would then apply but this is not true. We have found that the transfer was for the purpose of paying debts and that the plaintiff expected to share in those proceeds. Thus, the proceeds were still marital property. However, to the extent that defendant paid debts incurred in the acquisition of the real estate, Section 401(e) (5) would exclude the payments from marital property.

The record indicates that defendant held $11,595.68 after such payment. It is that amount that is subject to distribution in this case.

The attached order will be entered.

## ORDER OF COURT

And now, this November 1, 1983, defendant's exception relating to 23 P.S. §401(e) (5) is sustained.

All other exceptions are dismissed. The Master's award is adopted by this court except that plaintiff's share of marital distribution is set at 65 percent of $11,595.68 or $7,537.19.